Frank McDonald v. Commissioner.
McDonald v. Commissioner
Docket No. 3266.
United States Tax Court
1944 Tax Ct. Memo LEXIS 48; 3 T.C.M. (CCH) 1191; T.C.M. (RIA) 44363; November 11, 1944
*48 Curtis D. Wernette, Esq., for the petitioner. Walter W. Kerr, Esq., for the respondent. SMITH Memorandum Opinion SMITH, Judge: The petitioner seeks the redetermination of a deficiency in income tax for the calendar year 1941 in the amount of $1,802.03. The only question in issue is the amount of net income derived by the petitioner during the calendar year from a speculative business of placing bets on racing horses. [The Facts] The petitioner is a resident of Detroit, Mich. He filed his income tax return for the taxable year with the collector of internal revenue at Detroit. Since 1935 or 1936 the petitioner has conducted a business which consists of placing bets upon race horses. He has an office at his home but has no employees. His business is done almost entirely by telephone. Shortly after the business of bookmaking was prohibited in the City of Detroit, the petitioner started the business in which he is now engaged. During 1941 he had about 75 or 80 clients who were interested in betting on race horses. Whenever any of his clients wished to bet on a horse running on any of the racing tracks in the United States the petitioner would take their bets over the telephone *49 at the regular odds prevailing at the race track. These odds would not be known by the petitioner until after the race was run. The amount of the bet might be only fifty cents or as much as $10. If the bettor won the petitioner paid him the amount of his winnings. If the bettor lost the petitioner collected from the bettor the amount of the bet. When a bettor telephoned a bet to him the petitioner made out a slip showing the amount of the bet and the horse upon which the bet was being placed. After the race had been run the petitioner contacted the bettor, either paid him the amount that he had won or collected from the bettor the amount of the bet. Settlements were ordinarily made with the bettor on the day following the day the race was run. But in some cases settlements were made only once a week. Long prior to 1941 the petitioner through his accountant contacted the internal revenue bureau, collector's office, as to what records should be kept to show the results of his operations. He was advised to keep a record each day of the total amounts of the bets placed with him and the amounts that he won or lost, together with a record of any expenses paid out by him which were incident *50 to his business. Accordingly the petitioner filled out a daily record of the amount of the bets placed with him, the amount of any expenses incident to the business, and the amount that he won or lost on the day's transactions. These daily record sheets were forwarded to his accountant who kept a book record for the petitioner throughout the year 1941. The above record for 1941 shows that for some months the petitioner made a gain on his business while for other months he sustained a loss. His earnings were in excess of his losses for seven months of the taxable year while losses exceeded expenses for five months of the year. The net result, as shown by the petitioner's books of account, was a gain upon the business for the taxable year of $1,990.75. The total amount bet during the year was $119,529. The petitioner filed his tax return for the calendar year upon the cash receipts and disbursements basis. It showed a net income for the year of $2,007.60. Upon the audit of the return the respondent added to the net income reported $9,964, making an adjusted net income of $11,971.60 upon the basis of which the deficiency in income tax of $1,802.03 was determined. In his deficiency *51 notice the respondent stated: "It is concluded that the profits on gross race horse bets of $119,529.00 are at least 10 percent, or $11,952.90. Since you reported a profit of only $1,988.90 there has been added to income the amount of $9,964.00." The respondent contends that since at pari-mutuel racing tracks 10 percent of the bets placed is taken out for the racing association it must be assumed that the petitioner, under no expense except for telephone, stationery, etc., must have made at least 10 percent upon the gross bets placed with him. The respondent further contends that the records kept by the petitioner are not sufficient to show the gross and net income of the petitioner. He claims, for instance, that the petitioner should have kept the daily slips made out by him of each bet placed by each of his patrons. The petitioner states that these were destroyed after he had made up his record for each day's business and that the possession by him of such racing slips might have been used against him in a proceeding against him for taking bets on horse races. The petitioner has testified under oath that the daily slips made out by him for the year 1941 and received in evidence *52 and the book kept by his accountant reflecting his transactions accurately and truthfully represent his gains upon his business. There is no claim made by the respondent that his action in the determination of a deficiency in income tax was not entirely arbitrary. He has simply assumed that the petitioner must have made a profit of at least 10 percent upon the gross bets placed with him. Athough the respondent's determination * is prima facie correct and the burden of proof that it is incorrect is upon the petitioner, we think that the petitioner has borne this burden of proof. We cannot assume, without any proof whatever, that a person engaged in such a business as the petitioner was engaged in has a profit of at least 10 percent upon bets placed with him. His sworn statement is that the net profits received by him from his horse racing business in 1941 were $1,990.75. This is in accordance with the book records kept. Decision of no deficiency will be entered.